IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCIS BOYLE**, *et al.*,      *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **UNITED STATES OF AMERICA**,      *Defendant* | : : : | No. 20-6219 |

**MEMORANDUM**

PRATTER, J.                                                                                      MAY 31, 2022

Francis and Donna Boyle initiated this action in December 2020, asserting claims based on the alleged failure of doctors at the Philadelphia Veterans Administration Medical Center ("VA") to diagnose Mr. Boyle's lung cancer until it was in an advanced stage. In particular, they fault the doctors for not ordering a recommended lung CT scan follow-up in 2018. The United States filed a motion to dismiss any claims based on corporate negligence for lack of jurisdiction and to exclude the expert testimony of Dr. Kenneth Rothfield. For the reasons that follow, the Court will grant the motion in part.

## BACKGROUND

Mr. Boyle is a patient at the Philadelphia VA. He has a personal history of smoking. Beginning in May 2016, his lung CT scans showed pulmonary nodules. He underwent repeat CT scans in August 2016, February 2017, and August 2017, with follow-ups with the VA doctors in November 2016, January 2017, and May 2017. After his August 2017 scan, the radiologist recommended a follow-up CT scan in May 2018, but this recommendation was not communicated to Mr. Boyle. When Mr. Boyle next saw two VA doctors in May 2018 (Drs. Vida Chen and Poorvi Trivedi), they did not refer to his history of pulmonary nodules or the recommendation about another follow-up CT scan. Neither doctor ordered a follow-up CT scan.

Mr. Boyle saw Dr. Trivedi again for primary care in January 2019. Dr. Trivedi's notes for that visit omitted the results of the August 2017 CT scan. Mr. Boyle returned for primary care appointments with Dr. Trivedi in September 2019 and October 2019. Although Mr. Boyle had lost 12 pounds by September, Dr. Trivedi did not make note of this weight loss. Dr. Trivedi's notes continued to omit the August 2017 CT scan.

Mr. Boyle called the VA primary clinic in December 2019 complaining of nausea and weight loss, which Dr. Trivedi attributed to gastrointestinal causes. At the GI consult nine days later, an unnamed doctor ordered a CT scan based on Mr. Boyle's history of smoking and a 20-pound weight loss. The CT scan revealed a lung malignancy, and Mr. Boyle was admitted to the hospital on January 10, 2020 for the presence of lung fluid. Five days later, Mr. Boyle expressed to Dr. Trivedi his concerns about delays in testing the lung fluid and requested faster testing. His results were returned six days later and revealed metastatic lung cancer. Mr. Boyle was diagnosed with metastatic lung cancer by the VA oncology clinic on January 28, 2020. He underwent a lung mass biopsy in February 2020 and began treatment for inoperable Stage IV lung cancer. He has had many complications from his cancer treatment, including 60-pound weight loss.

On February 24, 2020, Mr. and Mrs. Boyle met with the VA's Deputy Chief of Staff for Patient Safety and Quality, Matthew Garin, and two VA risk managers, Rebecca Smith and Carol Newell. The Boyles allege that, at this meeting, they learned about the recommendation for a 2018 CT scan for the first time. According to the Boyles, the Philadelphia VA "has a history of systemic failure of reporting findings of abnormal CTs revealing pulmonary nodules requiring follow up to their patients." Compl. ¶ 42.

The United States has filed a motion to dismiss any claims alleging corporate negligence for lack of subject matter jurisdiction under the Federal Tort Claims Act. The United States also

asks the Court to exclude the expert testimony of Dr. Kenneth Rothfield because his proposed testimony about corporate negligence issues is not relevant and he does not meet certain Pennsylvania competency requirements for medical expert witnesses. Mr. Boyle opposes the motion. The Court held oral argument on April 6, 2022 and allowed the parties to submit supplemental briefing.

## LEGAL STANDARDS

A Rule 12(b)(1) motion challenges a federal court's authority to hear a claim for lack of subject matter jurisdiction. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The plaintiff "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). If the defendant does not raise any factual disputes in a Rule 12(b)(1) challenge to jurisdiction, the Court must accept the complaint's allegations as true and consider only the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000).

Under Pennsylvania law, "[c]orporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991). "This theory of liability creates a nondelegable duty which the hospital owes directly to a patient." *Id.*

The Federal Torts Claims Act (FTCA) provides a limited waiver of the United States's immunity to private tort claims arising from "the negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1)

3

(emphasis added). Because the tort must "arise from an 'act or omission of any *employee* of the Government,'" the FTCA does not waive sovereign immunity for claims based on corporate negligence. *Daniels v. United States*, No. 20-cv-3893, 2021 WL 2327856, at *2 (E.D. Pa. June 1, 2021) (emphasis added).

## DISCUSSION

Having conducted discovery, the United States now asks the Court to dismiss any claims based on corporate negligence for lack of subject matter jurisdiction[1] and to exclude Dr. Rothfield as an expert witness for lack of relevance and competency under Pennsylvania's Medical Care Availability and Reduction of Error (MCARE) Act, 40 Pa. Stat. § 1303.512.

### I. Corporate Negligence

First, the United States asks the Court to dismiss any claims that the Boyles base on corporate negligence. But there are no such claims to dismiss.

The preliminary matter of the Boyles' complaint states:

> 6. . . . The Philadelphia [VA] includes Vida Chen, M.D., and Poorvi Trivedi, D.O. as well as all other employees, agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees. *As stated more fully herein, a claim for direct corporate negligence is also asserted against this Defendant.*

Compl. ¶ 6 (emphasis added).

However, after this introductory scene-setting allegation, the complaint does not include a standalone count for corporate negligence, and the Boyles actually have disavowed bringing any such claim. Because there is no claim for corporate negligence before the Court, in order to avoid

---

[1] A challenge to subject matter jurisdiction may be raised at any point prior to entry of final judgment. Fed. R. Civ. P. 12(h)(3); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

any ambiguity in the future, the Court will grant the partial motion to dismiss by striking the last sentence of paragraph 6 of the complaint.

But this is not the end of the issue. Although they do not raise a claim for corporate negligence, the Boyles assert that their complaint *does* raise claims against VA employees beyond the primary care providers, Dr. Trivedi and Dr. Chen. The Boyles are not forthcoming with specific names, instead asserting they have alleged claims "pertaining to the mismanagement of Mr. Boyle's diagnostic test results by those responsible for monitoring, treating, and caring for Francis Boyle from January 2017 to January 2020." Doc. No. 26, at 2.

In the complaint, the Boyles cast a wide net by asserting their claims against the following:

> 8. All physicians, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of the United States of America and specifically Philadelphia [VA], including but not limited to Vida Chen, M.D. and Poorvi Trivedi, D.O. and the Department of Primary Care, as well as the Department of Radiology who are responsible for monitoring, treating, and caring for Francis Boyle from January 2017 through January 2020 were acting as duly authorized, actual, apparent and/or ostensible agents, servants, and employees of Defendant United States of America and Philadelphia [VA], and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Philadelphia [VA]. The identity of any other individuals involved in Mr. Boyle's care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

Compl. ¶ 8.[2]

To the extent the Boyles specify a claim against another employee of the VA besides Dr. Chen or Dr. Trivedi, the United States also argues that the claim is subject to the demand of administrative exhaustion. The FTCA requires a plaintiff to exhaust administrative remedies as a jurisdictional prerequisite to filing suit. 28 U.S.C. §§ 2675(a), 2401(b); *McNeil v. United States*,

---

[2] In opposition to the motion to dismiss, the Boyles cite *Rayonier Inc. v. United States*, 352 U.S. 315, 316 (1957), for the proposition that it is sufficient to plead negligence by "Forest Service personnel." Although this case long pre-dates the *Twombly* and *Iqbal* case law on pleading standards, the Court need not address this issue because the motion to dismiss is not based on failure to state a claim under Rule 12(b)(6).

5

508 U.S. 106, 111–13 (1993). The purpose of this requirement is to provide the federal agency "a fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *McNeil*, 508 U.S. at 111–12.

The United States argues that the Boyles did not "include any explicit claim for corporate negligence in their administrative claims." Doc. No. 14-1, at 8. But the Boyles assert that they are pursuing a claim based a "system [that] is made up of VA doctors," not corporate negligence. Doc. No. 20-1, at 7. Although this dispute would appear to be moot, the Boyles do pursue expert testimony on the topic of hospital administration, so the Court will briefly address administrative exhaustion of this issue.

In their administrative complaint, the Boyles claimed that "Mr. Boyle was being followed by the Philadelphia [VA] for multiple medical conditions including lung nodules," that the recommended May 2018 follow-up scan "was never communicated by any VA physician to Mr. Boyle," and that the scan was never ordered. Doc. No. 14-7, at 4. They also named Dr. Matthew Garin, the VA's Deputy Chief of Staff, as a relevant witness. *Id.* This provided a sufficient opportunity for the United States to investigate which VA physicians were responsible for overseeing communication of follow-up care as administrators. *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 958 (3d Cir. 1982). To the extent the Boyles intend to offer testimony on this point, the Court finds that the administrative exhaustion requirement has been met by the Boyles.[3]

## II. Dr. Rothfield's Testimony

Next, the United States seeks to exclude the opinion testimony of Dr. Rothfield. The United States argues that Dr. Rothfield's testimony is not relevant because it pertains to corporate

---

[3] The Court does not opine on whether a certificate of merit is required for claims against physicians acting in administrative capacities.

negligence and that Dr. Rothfield is not a qualified medical expert under Pennsylvania's Medical Care Availability and Reduction of Error (MCARE) statute.

Dr. Rothfield is the Chief Medical Officer at Texas Health Arlington Memorial Hospital and previously served as a Chief Medical Officer at other hospitals from 2014 to 2020. He obtained a Texas administrative medical license in 2018. He is also an anesthesiologist, most recently serving as the chair of a department of anesthesiology in 2014. From 1993 to 2014, Dr. Rothfield served in various teaching roles affiliated with the University of Maryland Schools of Nursing and Medicine and the University of Pittsburgh School of Medicine. He also teaches workshops on improving patient experiences, listing one lecture in 2018 and two in 2019.

The Boyles have produced a 3-page expert report and 1-page supplemental report authored by Dr. Rothfield. He opines that "it is clear that [the VA] had no reliable process for notifying attending physicians of imaging results" but that "lack of a reliable attending physician notification process does not excuse Dr. Trivedi's ignorance of the August 7, 2017 CT scan." Doc. No. 14-9, at 4. He also opines that the VA's "process and polices were inadequate and below the standard of care" as a teaching hospital and "[t]he failures of the institution and Dr. Trivedi violated the standard of care for which [the Philadelphia VA] is responsible and caused harm to Mr. Boyle." *Id.* Dr. Rothfield asserts these opinions "to a reasonable degree of medical certainty." *Id.*

In his supplemental report, Dr. Rothfield shifts to opining that "the leadership team . . . was negligent for failing to ensure that attending physicians received important patient information." Doc. No. 14-10, at 2.

### A. Relevance

The United States first argues that Dr. Rothfield's opinions about institutional failures are really opinions about corporate negligence and, as such, are not relevant to this litigation. The

7

United States raises this issue as one of relevance, rather than lack of notice regarding the content of Dr. Rothfield's testimony or the basis for his opinions. Under the Federal Rules of Evidence, "[e]vidence is relevant if it (a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. *See* Fed. R. Evid. 402.

Based on his supplemental report, Dr. Rothfield's comments about "the VA" focus on the handling of Mr. Boyle's care by VA leadership.[4] The Court finds that this proposed testimony is relevant to the dispute regarding whether particular VA doctors serving in leadership roles were negligent in overseeing Mr. Boyle's physician notification process.

### B. Competency under MCARE

The United States also argues that Dr. Rothfield does not meet the MCARE requirements for medical expert testimony. If a party seeks to admit expert testimony, the expert witness must be qualified to offer such an opinion. Fed. R. Evid. 702. In federal civil cases, "state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. The Commonwealth of Pennsylvania's MCARE statute establishes witness competency requirements in medical malpractice lawsuits.

The MCARE statute sets two requirements for experts "testifying on a medical matter, including the standard of care": they must (1) possess an unrestricted physician's license in any state and (2) be engaged in "active clinical practice or teaching," or have retired from it in the past five years. 40 Pa. Stat. § 1303.512(b). MCARE's "active teaching" requirement excludes a *de minimis* level of teaching, measured by a range of factors including whether the expert is affiliated with any medical school. *Weiner v. Fisher*, 871 A.2d 1283, 1290 (Pa. Super. Ct. 2005). A court

---

[4] VA leaders fall within the scope of paragraph 8 of the complaint.

8

"may waive the requirements . . . for an expert on a matter *other than the standard of care* if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience." 40 Pa. Stat. § 1303.512(b) (emphasis added).

MCARE imposes additional requirements on experts testifying about the standard of care, including that they practice in the same subspecialty and be board-certified by the same or similar board as the doctor whose care is at issue. § 1303.512(c). There is also a waiver provision for these additional requirements if the court "determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period." § 1303.512(e).

Here, Dr. Rothfield appears to opine on the duty of care owed both by Dr. Trivedi as a primary care physician and "the leadership team" at the VA.

### 1. Dr. Trivedi's Duty of Care

First, the Court assesses whether Dr. Rothfield is competent to opine on the duty of care owed by Dr. Trivedi as a primary care physician. Dr. Rothfield's Texas administrative medical license is not an unrestricted physician's license. *See* Doc. No. 14-14 (explaining that a Texas administrative medicine license "is a limited license" that "does not include the authority to practice clinical medicine"). He has also not been affiliated with a medical school in the last five years, and his curriculum vitae demonstrates only occasional teaching in seminars that do not appear clinical in nature. Although the Boyles argue that the Court should waive these MCARE requirements, such a waiver is available only for experts opining on issues "other than the standard of care." 40 Pa. Stat. § 1303.512(b). Because Dr. Rothfield seeks to opine on Dr. Trivedi's standard of care, these requirements are not waivable.

9

Additionally, Dr. Rothfield cannot, as an anesthesiologist, demonstrate that he meets the "same specialty and board certification requirements" to opine on the duty of care owed by a primary care physician. *See* § 1303.512(c). The case law cited by the Boyles to argue for an additional waiver is inapposite because the cases involve overlapping specialties. *See Renna v. Schadt*, 64 A.3d 658, 665–67 (Pa. Super. 2013) (waiving requirements for a pathologist who was sufficiently knowledgeable on performing biopsies); *Carter v. United States*, No. 11-cv-6669, 2014 WL 512064, at *7–9 (E.D. Pa. Feb. 7, 2014) (waiving specialty and board certification requirements for a pediatrician who had overlapping expertise with an OB/GYN on prenatal care issues). Here, by contrast, Dr. Rothfield's field of anesthesiology has no professional connection to management of Mr. Boyle's missed lung cancer. Thus, Dr. Rothfield is not competent to opine on the duty of care owed by Dr. Trivedi as a primary care physician.

2. VA Leaders

However, Dr. Rothfield also opines on the duty of care owed by VA doctors serving in leadership positions. Dr. Rothfield's testimony is relevant to the topic of whether VA leaders imposed adequate safeguards to ensure necessary follow-up care was ordered.

There is a dearth of case law on whether MCARE applies to testimony offered about the duty of care owed by a physician acting in an administrative role. The Court will consider the text and purpose of the MCARE statute to decide whether to apply the requirements to Dr. Rothfield's proposed testimony about the administrative duty of care.

*First*, the Court looks to the text of the MCARE statute. The MCARE requirements apply to expert "medical testimony" about a "medical matter." 40 Pa. Stat. § 1303.512(b). The statute provides examples of a "medical matter" as "the standard of care, risks and alternatives, causation and the nature and extent of the injury." *Id.* Courts typically apply these requirements to testimony

10

about direct provision of medical care such as surgeries, *Jacobs v. Chatwani*, 922 A.2d 950 (Pa. Super. Ct. 2007), choice of biopsies for diagnosis, *Renna v. Schadt*, 64 A.3d 658 (Pa. Super. Ct. 2013), and treatment such as chemotherapy, *Vicari v. Spiegel*, 989 A.2d 1277 (Pa. 2010). The United States has not directed the Court to any cases involving application of the MCARE competency requirements to experts opining on medical administration.

In the most analogous case, the Superior Court of Pennsylvania found that the MCARE requirements do not apply to opinions about the standard of care owed by residents (who are not yet board-certified physicians themselves) and hospitals. *Campbell v. Attanasio*, 862 A.2d 1282, 1290 (Pa. Super. Ct. 2004), *appeal denied*, 881 A.2d 818 (Pa. 2005) (Table) (accepting argument that MCARE "applies only to physicians, not to hospitals"). Although the plaintiffs disclaim a theory of corporate negligence in this FTCA action, the state court's analysis of MCARE as inapplicable to claims against hospitals supports a narrow reading of MCARE as applying only to physicians providing patient treatment, as opposed to physicians performing administrative roles. The Court will narrowly construe the phrase "medical testimony" as excluding testimony about hospital administration. Reviewing Dr. Rothfield's report, the Court finds that his opinions about VA leadership do not constitute "medical testimony" subject to MCARE requirements.

*Second*, this reading comports with the purpose of the statute. The Pennsylvania legislature passed MCARE to promote "a fair legal process" by ensuring that only qualified experts testify in medical malpractice cases. *Wexler v. Hecht*, 928 A.2d 973, 980 (Pa. 2007) (noting that "the Legislature has made manifest in the MCARE Act its intention to 'ensure a fair legal process and reasonable compensation for persons injured due to medical negligence'") (quoting 40 Pa. Stat. Ann. § 1303.102). While Dr. Rothfield is not engaged in active clinical practice or teaching, he is currently active in hospital administration as a Chief Medical Officer. Dr. Rothfield also holds an

*administrative* medical license. As such, Dr. Rothfield appears qualified to opine on medical entities' administration. On a somewhat different level, rigid application of the MCARE requirements to an expanded concept of "medical testimony" would impede a fair legal process because it would effectively prevent plaintiffs from offering testimony about such topics. Applying the purpose of the MCARE licensing and practice requirements, the Court finds that Dr. Rothfield's testimony about the VA leaders acting as administrators does not constitute "medical testimony" so as to subject him to MCARE requirements.

Thus, although Dr. Rothfield is not competent under MCARE to testify on the standard of care owed by particular VA leaders as practicing *physicians*, he is competent to testify about the duty of care owed by particular VA leaders as *administrators*.

## CONCLUSION

For the foregoing reasons, the Court grants the United States of America's partial motion to dismiss any corporate negligence claims and grants in part and denies in part the request to exclude Dr. Rothfield's testimony. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE