IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS BOYLE, *et al.*, *Plaintiffs* | : : : | CIVIL ACTION |
| v. | : : | |
| UNITED STATES OF AMERICA, *Defendant* | : : : | No. 20-6219 |

### MEMORANDUM

PRATTER, J.                                                                                                                 AUGUST 10, 2022

Francis and Donna Boyle allege that doctors at the Philadelphia Veterans Administration Medical Center ("VA") failed to diagnose Mr. Boyle's lung cancer until it was in an advanced stage. In particular, they fault the doctors for not ordering a recommended follow-up lung CT scan. The United States previously filed a motion to dismiss any claims based on corporate negligence for lack of jurisdiction under the Federal Tort Claims Act (FTCA) and to exclude the expert testimony of Dr. Kenneth Rothfield. The Court denied that motion in relevant part. The United States has now filed a second partial motion to dismiss the Boyles' complaint for lack of subject matter jurisdiction on the basis that the United States has sovereign immunity under the discretionary function exception to the FTCA. In the event the Court grants that motion, the United States also again moves to exclude Dr. Rothfield's testimony.

For the reasons that follow, the Court denies the motion.

### BACKGROUND

#### I.     Factual Background

Mr. Boyle is a patient at the Philadelphia VA. He has a personal history of smoking. Beginning in May 2016, his lung CT scans showed pulmonary nodules. He underwent repeat CT scans in August 2016, February 2017, and August 2017, and had follow-up appointments with VA

1

doctors in November 2016, January 2017, and May 2017. After his August 2017 scan, the radiologist recommended a follow-up CT scan in May 2018. But this recommendation was never communicated to Mr. Boyle. When Mr. Boyle next saw two VA doctors in May 2018 (Drs. Vida Chen and Poorvi Trivedi), they did not refer to his history of pulmonary nodules or to the recommendation for another follow-up CT scan. Neither doctor ordered a follow-up CT scan.

Mr. Boyle next saw Dr. Trivedi for primary care in January 2019. Dr. Trivedi's notes for that visit omitted the results of the August 2017 CT scan. Mr. Boyle returned for primary care appointments with Dr. Trivedi in September 2019 and October 2019. Although Mr. Boyle had lost 12 pounds by September, Dr. Trivedi did not make note of this weight loss. Dr. Trivedi's notes continued to omit the August 2017 CT scan.

Mr. Boyle called the VA primary clinic in December 2019 complaining of nausea and weight loss, which Dr. Trivedi attributed to gastrointestinal causes. At the GI consult nine days later, an unnamed doctor ordered a CT scan based on Mr. Boyle's history of smoking and 20-pound weight loss. The CT scan revealed a lung malignancy, and Mr. Boyle was admitted to the hospital on January 10, 2020 for the presence of lung fluid. Five days later, Mr. Boyle expressed to Dr. Trivedi his concerns about delays in testing the lung fluid and requested faster testing. His results were returned six days later and revealed metastatic lung cancer. Mr. Boyle was formally diagnosed with metastatic lung cancer by the VA oncology clinic on January 28, 2020. He underwent a lung mass biopsy the next month and began treatment for inoperable Stage IV lung cancer. He has had many complications from his cancer treatment, including 60-pound weight loss.

Mr. and Mrs. Boyle met with the VA's Deputy Chief of Staff for Patient Safety and Quality, Matthew Garin, and two VA risk managers, Rebecca Smith and Carol Newell, on February 24,

2020. The Boyles allege that, at this meeting, they learned about the recommendation for a 2018 CT scan for the first time. According to the Boyles, the Philadelphia VA "has a history of systemic failure of reporting findings of abnormal CTs revealing pulmonary nodules requiring follow up to their patients." Compl. ¶ 42, Doc. No. 1.

## II. Procedural Background

The United States' first motion to dismiss challenged the Court's subject matter jurisdiction to hear certain portions of the Boyles' complaint that, according to the United States, relied on a theory of corporate negligence not cognizable under the Federal Tort Claims Act, meaning the United States had sovereign immunity from such claims. The United States also sought to exclude the testimony of Mr. Boyle's expert, Dr. Kenneth Rothfield, arguing that his proposed testimony is only relevant to corporate negligence and that he is not qualified to testify about the duty of care owed by physicians outside his specialty.

In opposing the first motion to dismiss, Mr. Boyle argued that his claims "pertain[] to the mismanagement of Mr. Boyle's diagnostic test results by those responsible for monitoring, treating, and caring for [him] from January 2017 to January 2020." Doc. No. 26, at 2. He countered the United States' argument that he had not administratively exhausted this type of claim by citing his administrative complaint, which alleged that he "was being followed by the Philadelphia [VA] for multiple medical conditions including lung nodules," that the recommended May 2018 follow-up scan "was never communicated by any VA physician to Mr. Boyle," and that the scan was never ordered or performed. Doc. No. 14-7, at 4. He also named Dr. Matthew Garin, the VA's Deputy Chief of Staff, as a relevant witness. *Id.* Denying the first motion to dismiss, the Court found that this administrative complaint "provided a sufficient opportunity for the United States to investigate which VA physicians were responsible for overseeing communication of

3

follow-up care as administrators." *Boyle v. United States*, 2022 WL 1773670, at *4 (E.D. Pa. June 1, 2022) (citing *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 958 (3d Cir. 1982)).

The United States has now filed a second motion to dismiss any claims based on "administrative" negligence, arguing that the Court lacks subject matter jurisdiction because any such claim falls under the discretionary function exception to the Federal Tort Claims Act. In the event the Court dismisses any claims based on "administrative" negligence, the United States also, again, asks the Court to exclude the expert testimony of Dr. Kenneth Rothfield because his proposed testimony is not relevant. Mr. Boyle opposes the motion.

## LEGAL STANDARDS

A party may challenge a federal court's subject matter jurisdiction at any time. Fed. R. Civ. P. 12(b)(1), (h)(3); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3d Cir. 1992). The party "asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

An attack on subject matter jurisdiction may be either a facial or a factual attack. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). However, for "a factual attack, the court may consider evidence outside the pleadings." *Id.*

DISCUSSION

After the Court denied its first motion to dismiss, the United States now takes a new angle to challenge the Court's subject matter jurisdiction, arguing that the discretionary function exception to the Federal Tort Claims Act applies to the Boyles' claim for "administrative" liability. In addition, contingent upon the Court granting the United States' partial motion to dismiss, the United States again moves to exclude Dr. Rothfield as an expert witness for lack of relevance.

I.   **The Discretionary Function Exception to the FTCA Does Not Bar the Boyles' Claims**

Because both parties introduce evidence outside the pleadings, the Court treats the United States' partial motion to dismiss as a factual attack on its jurisdiction. *Gould*, 220 F.3d at 176–77. This means that the Court need not accept the allegations in the Complaint as true, but this distinction only becomes relevant if the Government challenges a particular allegation through contrary facts for purposes of the jurisdictional analysis. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

First, it is necessary to identify what portions of the Complaint the United States asks the Court to dismiss. The United States makes a circular request, asking the Court to dismiss any claims to which the discretionary function exception applies because they are barred by the discretionary function exception. But the United States does not actually identify any portions of the Complaint the Court should dismiss. Instead, it suggests that the Court's previous opinion denying the first motion to dismiss read Mr. Boyle's allegations broadly to include claims based discretionary functions because the Court used the word "administrators." But "administrative" is not a magic word that automatically invokes the discretionary function exception.

The United States is generally immune from suit under the doctrine of sovereign immunity. *Gentile v. SEC*, 974 F.3d 311, 315 (3d Cir. 2020). The Federal Torts Claims Act (FTCA) provides

5

a limited waiver of the United States' sovereign immunity to private tort claims arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, there is an exception to the FTCA for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This is known as the "discretionary function exception." Because it is an exception to the United States' waiver of sovereign immunity, application of the discretionary function exception means that the United States maintains sovereign immunity and the Court lacks jurisdiction.

"[B]efore determining whether the discretionary function exception applies, a court must identify the conduct at issue." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "[T]he discretionary function exception will not apply when [1] a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow [because] the employee has no rightful option but to adhere to the directive. . . [or] [2] if the employee's conduct cannot appropriately be the product of judgment or choice [because] there is no discretion in the conduct for the discretionary function exception to protect." *Id.* The discretionary function exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

6

Here, the parties dispute whether the discretionary function applies to the failure to perform Mr. Boyle's follow-up CT scan in 2018. Mr. Boyle frames this as a claim based on "the negligent actions and inactions of [VA] employees and providers who mismanaged the handling of Mr. Boyle's August 2017 CT scan and corresponding recommendation for a May 2018 repeat CT scan." Doc. No. 33, at 1. Mr. Boyle argues that the mismanagement of his follow-up care does not fall within the FTCA's discretionary function exception.

### A. Federal Policy Prescribed the Course of Action

Mr. Boyle argues that his complaint does not challenge VA policy, but rather, the VA physicians' failure to follow their own policies for completing follow-up care. For example, Veteran Health Administration Directive 1088(1) establishes that "[a]ll test results requiring action must be communicated by the ordering provider, or designee, to patients no later than 7 calendar days from the date on which the results are available" or, if not requiring action, within 14 calendar days. *VHA Directive 1088—Communicating Test Results to Providers and Patients*, Dep't of Veterans Affairs, Veterans Health Admin. at 1 (Oct. 7, 2015), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=3148. Mr. Boyle does not challenge this prescribed time period. Instead, he claims that that the communication of his scan results did not comply with this policy because there was a delay of over two years before he learned of the recommendation.

The United States responds that VHA Directive 1088(1) "speaks to clinical care, not VA Medical Center leadership." Doc. No. 32, at 6. But the directive *does* "speak[] to . . . VA Medical Center leadership." For example, Directive 1088(1) contains a section specifically devoted to the obligations of the Chief of Staff or Associate Director for Patient Care Services to review test results communication and resolve "any gaps detected in test result follow-up processes." VHA Directive 1088, at 3. Here, Mr. Boyle contends that Deputy Chief of Staff for Patient Safety and

7

Quality Matthew Garin and other physician administrators who were "in charge of implementing communication safeguards at the VAMC [] as they relate to results of medical imaging studies" did not perform this mandatory duty to ensure results were communicated within (at most) 14 days. Doc. No. 33, at 2.

Failure to follow a federally-prescribed course of action does not implicate the discretionary function exception to the FTCA. *Berkovitz*, 486 U.S. at 536; *United States v. Gaubert*, 499 U.S. 315, 324 (1991) ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."); *Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000). If something is mandatory or prescribed, logically it is not within the ambit of something that is discretionary. Because Mr. Boyle alleges that VA providers and physician-administrators did not follow mandatory policy, the discretionary function exception does not apply.

Relatedly, the alleged failure to communicate Mr. Boyle's scan results cannot be considered an application of judgment or choice. Once again, "conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. The United States advances no argument as to how failure to ensure timely communication would be the product of judgment or choice. To the extent the United States argues that decisions about *how* to implement safeguards to ensure timely communication of test results are discretionary choices, it has provided no example of a choice that any of the physician-administrators made in establishing or refusing to establish safeguards. Rather, Mr. Boyle alleges failure to ensure that the policy requirements were met. This is not conduct involving "an element of judgment or choice" for purposes of the discretionary function exception. *Id.*

8

B. **Administrative Decisions Were Not Susceptible to Policy Analysis**

The Court will also briefly address the concept of an "administrative" decision for purposes of the discretionary function exception. The Court's previous discussion of the dual physician-administrator role held by physicians who ensure that test results are communicated in a timely manner does not trigger the discretionary function analysis in the way the United States suggests. For purposes of the discretionary function analysis, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *S.A. Empresa*, 467 U.S. at 813. A physician-administrator performs a variety of roles, which may include both discretionary and non-discretionary administrative decisions within the meaning of the FTCA. Although there is an administrative nature to ensuring that test results are properly communicated as required, this does not reflect "administrative decisions grounded in social, economic, and political policy" within the meaning of the discretionary function exception to the FTCA. *Id.* at 814. Indeed, the United States provides no argument as to what policy considerations are advanced by "deciding" not to report test results in a required amount of time.[1]

Instead, the United States argues that "the VA's conduct in training and supervising its employees falls squarely within the discretionary function exception." Doc. No. 30-1, at 9. It cites several cases where courts have dismissed claims based on negligent oversight, hiring, retention, training, discipline, and supervision. *Id.* But Mr. Boyle does not advance any of the types of training and supervision claims that these cases address.[2] For example, the United States cites

---

[1] As the United States argues, "nowhere in the Complaint . . . is there any articulation of any different policy, procedure, or supervisory practice the VA Medical Center leadership should have employed." Doc. No. 301, at 8. That is precisely the point: Mr. Boyle does not argue that a different policy choice should have been made. He argues that the VA should have followed the policies already in place by which it was supposed to abide.

[2] Although Directive 1088 refers to a "supervising practitioner," it treats that as person the "designee" who is personally responsible for ensuring the test results are communicated. VHA Directive 1088(1), at 4.

9

*Brown v. United States*, No. 17-cv-1551, 2018 WL 741731 (E.D. Pa. Feb. 7, 2018), *aff'd*, 823 F. App'x 97 (3d Cir. 2020). In *Brown*, the court dismissed portions of a complaint that alleged that "VA employees negligently hired, trained, retained, supervised, and failed to remove" a particular employee who assaulted co-workers. *Id.* at *4. The *Brown* court explained that the personnel decisions at issue were "policy-based in nature" because the employee handbook "specifically allows for the use of discretion in imposing discipline on an employee and sets forth various factors that the supervisor should consider when determining what penalty to impose." *Id.* at *6. Mr. Boyle's complaint alleges nothing of the sort. And, in contrast to the employee handbook in *Brown*, Directive 1088(1) does not "allow[] the employee discretion," *id.*, but instead establishes how "test results *must* be communicated," VHA Directive 1088(1), at 1 (emphasis added).

Overall, the discretionary function exception to the FTCA removes jurisdiction over only decisions that are susceptible to policy analysis. *Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000) ("The touchstone of the second step of the discretionary function test is susceptibility to policy analysis."). The Court of Appeals for the Third Circuit has cautioned that "susceptibility analysis is not a toothless standard that the government can satisfy merely by associating a decision with a regulatory concern." *Id.* at 755 (internal quotation marks omitted). Here, the United States does not even raise a vague regulatory concern.

Therefore, the Court will not dismiss any portions of Mr. Boyle's complaint based on the discretionary function exception to the FTCA.

## II. Because the Court Denies the United States' Motion to Dismiss, the Court Also Denies the United States' Motion to Exclude Dr. Rothfield's Testimony

The United States again seeks to exclude the opinion testimony of Dr. Rothfield. The United States argues that Dr. Rothfield's testimony is not relevant because it pertains to claims barred by the discretionary function exception to the FTCA. For the reasons already discussed,

10

the discretionary function exception does not apply to Mr. Boyle's claims. To the extent the United States criticizes the foundation for Dr. Rothfield's opinions (or the sparse nature of his three-page report and one-page supplemental report), a motion to dismiss for lack of subject matter jurisdiction is not the proper vehicle for this challenge.[3]

The Court's denial of the request to exclude Dr. Rothfield's testimony is without prejudice and the United States remains able to file a motion *in limine* or object—on specific grounds—to Mr. Boyle's future request to qualify Dr. Rothfield as an expert witness during the bench trial.

## CONCLUSION

For the foregoing reasons, the Court denies the United States' second motion to dismiss. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[3] The deadline for the United States to submit a Federal Rule of Evidence 702 (or "*Daubert*") motion was February 10, 2022. Doc. No. 13 ¶ 2.